UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

MARSHALL PAYNE

No. 20 CR 24

Judge Manish S. Shah

**ORDER**

Defendant's motion to suppress evidence [43] is denied. The parties shall file a status report on June 15, 2021, and state whether the case should be scheduled for trial or a status hearing. Time is excluded until June 17, 2021, under the Speedy Trial Act to serve the ends of justice. The delay is necessary to give the parties time for effective preparation, which includes review of this ruling for its effect on trial strategy, and outweighs the interests of the public and the defendant in a speedy trial.

**STATEMENT**

There are lots of laws regulating automobile traffic. Some of them are underenforced, and many drivers commit infractions without getting caught or cited by the police. Add to that the rule that an officer's ulterior motives do not make an objectively lawful traffic stop unconstitutional under the Fourth Amendment, and you get a recipe for uneven law enforcement and the seeds of community distrust. *See* Sarah A. Seo, *Policing the Open Road: How Cars Transformed American Freedom* (2019); *Whren v. United States*, 517 U.S. 806, 813 (1996). But while these concerns hover in the background, the question presented in this case is straightforward: did Chicago police officers observe a traffic violation before they pulled over defendant Marshall Payne?

My findings of fact, based on the evidence at the suppression hearing, my assessment of the officers' credibility, and inferences I draw from the testimony are as follows. Two Chicago police officers assigned to a gang enforcement team, Cunningham and Rosa, were driving on Harrison Street heading westbound toward California Street, on November 20, 2019, at 10:00 a.m. [57] at 12–14.[1] One of their

---

[1] Bracketed numbers refer to entries on the district court docket and referenced page numbers are taken from the CM/ECF header placed at the top of filings. The transcript of the evidentiary hearing is [57].

goals was to target gang members for arrests and prosecution. [57] at 24:8–10. Rosa was driving. [57] at 65:4–6. Cunningham had a tip that an Infiniti with a red stripe was associated with someone vowing retaliation for a killing. [57] at 40:25–41:3. When stopped at the intersection of Harrison and California, Cunningham saw a black Infiniti SUV with a red stripe turn left, from southbound California Street to eastbound Harrison. [57] at 15:2–5. Rosa did not know about the tip and was not on the lookout for the SUV. [57] at 69:18–23.

Cunningham wanted to stop the car because he thought the driver might be involved in criminal activity. [57] at 42:21–23. He knew, however, that he could not stop the car unless he had a lawful reason to do so. [57] at 42:16–19. Cunningham is a savvy officer, one who knows the rules, *see* [57] at 42:16–19, 44:8–15, and I infer that he realizes that he doesn't need to make up a traffic violation, when so many traffic violations are likely to occur and give him the sought-after justification for a stop. He has a certain self-regard for his skills as a police officer. *See* [57] at 23:9–11. But that ego did not make him so impatient that he could not wait for the inevitable traffic violation as he watched the Infiniti SUV.

As the SUV drove past the police car, Cunningham could see through the Infiniti's windshield. [57] at 48:20–49:1. He saw that the driver was not wearing a seat belt. [57] at 49:5–6. The defense argues that this testimony is not credible. Cunningham said that he saw the driver's yellow shirt, [57] at 49:5, suggesting that the color gave him an opportunity to see the missing seat belt across the driver's chest. But Rosa said nothing about a yellow shirt, and when he first saw the driver after pulling the car over, Payne was wearing a coat with pockets. [57] at 93:3–9 Payne had a gray sweater among his personal property. [58-4] at 2. Payne's arrest photo shows that he was wearing a yellow shirt. [58-3] at 2. Cunningham could have used this tidbit to bolster his claim that he saw the seat-belt violation. But there's no evidence that Payne's coat or sweater was covering his shirt entirely while he was driving. There's no evidence that Payne was wearing his seat belt. It does not defy common sense to infer that Payne's shirt was visible. I find that Cunningham saw some part of Payne's yellow shirt and saw that Payne wasn't wearing a seat belt. This was an offense under state law, *see* 625 ILCS 5/12-603.1(a), (d), and gave the officers probable cause to stop the SUV. *United States v. Dowthard*, 500 F.3d 567, 569 (7th Cir. 2007) (human observation of seat-belt violation was sufficient to make a traffic stop).

Cunningham told Rosa to pull over the SUV. [57] at 66:4–6. Rosa had not noticed the SUV or the seat-belt violation. [57] at 66:7–18. Rosa turned around to get behind the SUV. [57] at 66:19–21. Rosa could see the SUV and watched it for about half a block. [57] at 67:16–24. The police car was about 10 to 15 feet behind the SUV when Rosa saw it stop at the intersection of Washtenaw and Harrison, turn its right-

2

turn signal on, and turn right onto Washtenaw. [57] at 68:6–15. The SUV had not activated its turn signal until it hit the intersection. [57] at 68:12–13. Cunningham was watching the SUV too and saw that it did not activate its turn signal until it stopped at the intersection. [57] at 43:23–24.

The Chicago Municipal Code says that a "signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning." Municipal Code of Chicago § 9-40-200(b). It is unlawful to fail to perform any act required in the traffic code. *Id.* § 9-40-010. If someone is looking for a traffic violation to justify a stop, this is a good one, because it's probably happening with great frequency in the city.[2] But the overuse of traffic violations to justify police seizures is not the issue here. I find both Rosa and Cunningham credible on the relevant question—they both saw the failure to activate the turn signal within 100 feet of the turn onto Washtenaw. This was a code violation and provided an objectively lawful basis to stop the SUV. *See United States v. Shields*, 789 F.3d 733, 745 (7th Cir. 2015).

Rosa activated the police lights, and the SUV pulled over and stopped. [57] at 68:18–19, 69:4. Payne, the driver, was alone. [57] at 70:9–20. Rosa approached the driver's side while Cunningham approached the passenger side. [57] at 70:4–8. Rosa asked Payne for his driver's license, and Payne said he didn't have one. [57] at 71:8–12. Rosa told Payne to step out of the car and he complied. [57] at 71:17, 72:8–12. Before Payne stood up, as he was still seated in the driver's seat, Rosa saw that Payne had a cell phone in his left hand and some food in his right hand. [57] at 83:20–25. Rosa opened the door and told Payne to put the items away and step out. [57] at 84:23, 85:3–5. Payne did something with the food that Rosa couldn't see. [57] at 86:14–16. As Payne got out of the car, he put the cell phone from his left hand into a coat pocket. [57] at 86:17–23. From the same pocket, with his left hand, Payne pulled out a handgun. [57] at 86:17–25. Payne had the gun in his open palm and Rosa grabbed it. [57] at 87:1–10.

There are some inconsistencies between the two officers' testimony about the discovery and recovery of the gun. Cunningham said that he saw the gun along with other items in Payne's hand. [57] at 20:7–13. Cunningham said that Rosa told Payne to drop the items, and Payne dropped the items into the driver's side of the SUV. [57] at 35:17–20. Cunningham also said that he did not recall who grabbed the gun. [57] at 53:19–20, 60:12–13. Rosa, on the other hand, said that Payne dropped the food, put the cell phone in his pocket, and only had the gun in his open palm. [57] at 72:8–

---

[2] There is no evidence in the record of how often a turn-signal violation occurs, or how often it is cited by police. Nevertheless, it strikes me as uncontroversial to say that lots of Chicago drivers signal less than 100 feet before turning.

3

23. Rosa said he grabbed the gun directly from Payne's hand. [57] at 74:8–17. I credit Rosa's version because he was closer to Payne and interacting with him. The inconsistencies do not suggest any intentional misrepresentations, and more importantly, do not undermine the credibility of each officer's testimony about seeing the traffic violations. And the lack of body-worn or dash-camera footage, GPS data, or other surveillance footage to corroborate the officers' testimony does not change my assessment of their credibility. There was nothing nefarious about the lack of corroboration here.

The defense makes no argument that the officers unreasonably prolonged the traffic stop, improperly seized the gun after they saw it, or obtained statements from Payne in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). The only argument for suppression of evidence is that the officers did not have reasonable suspicion to stop the SUV. [58] at 7–13; [57] at 98:24–99:7. In light of my findings, there was no Fourth Amendment violation. The officers observed two traffic violations, and that justified Payne's detention. Rosa properly seized the gun during the stop. The motion to suppress evidence is denied.

ENTER:

Date:   June 1, 2021

Manish S. Shah
United States District Judge